IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



LORILAR ENTERPRISES, INC.,

      Plaintiff,

v.                                                                                               CIVIL ACTION NO. 2:16cv231

SCHLOTZSKY'S FRANCHISE LLC,

SERVE:

    Corporation Service Company
    40 Technology Parkway Street
    Suite 300
    Peachtree Corners, GA 30092-2924

and

    Secretary of the Commonwealth
    P.O. Box 2452
    Richmond, VA 23218

      Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Lorilar Enterprises, Inc., by counsel, and for its complaint for declaratory judgment, pursuant to 28 U.S.C. § 2201 and the Virginia Retail Franchising Act, Va. Code § 13.1-557 *et seq.*, against Defendant Schlotzsky's Franchise LLC, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Lorilar Enterprises, Inc. (hereinafter "Lorilar"), is a Virginia corporation with its principal office at 946 Oriole Drive, Virginia Beach, Virginia, 23451. It is a family owned and operated corporation. Lorilar's President is Larry D. Speas. Speas' wife, Lori F. Hubble, is the

Vice-President, Secretary and Treasurer. Speas and Hubble are the only officers and the sole owners and are both Virginia residents.

2. Lorilar owns and operates five Schlotzsky's franchises in Norfolk and Virginia Beach: Store No. 989, 2201 Upton Dr. Suite 908, Virginia Beach ("Red Mill"); Store No. 1205, 700 North Military Highway, Norfolk ("Military Circle"); Store No. 1303, 246 E. Main St., Norfolk ("Main Street"); Store No. 1702, 224 Constitution Dr., Virginia Beach ("Pembroke"); and Store No. 2754, 757 First Colonial Rd., Virginia Beach ("Hilltop").

3. Lorilar has owned and operated Schlotzsky's franchises for twenty-eight years. Lorilar is the longest continuing Schlotzsky's franchisee in Virginia.

4. Defendant Schlotzsky's Franchise LLC (hereinafter "Schlotzsky's") is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. Schlotzsky's does extensive business in the Commonwealth of Virginia, including by contracting with Virginia citizens, but is not registered to do business in Virginia, and does not have a registered agent in Virginia.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Schlotzsky's alleges that Lorilar owes it over $100,000, and Lorilar will incur substantial losses if its franchises are terminated, to include the loss of its five franchises which it values at over $1.5 million.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

7. Lorilar incorporated in June 1987 and opened its first Schlotzsky's restaurant in February 1988. That first restaurant closed at the end of its twenty year term, but Lorilar opened

2

five other Schlotzsky's restaurants which remain in operation: Military Circle in 1989, Main Street in 1993, Pembroke in 1996, Hilltop in 2001, and Red Mill in 2008.

8. In or about April 2013, Schlotzsky's sent Lorilar a letter stating that it was behind in certain required payments, and purporting to terminate all five franchises. At that time, Schlotzsky's required Lorilar to pay a 6% royalty revenue for each of its franchises, along with a 3% local advertising fee and a 1% national advertising fee. The 3% fee was returned to franchisees for local marketing purposes. After negotiations, Schlotzsky's reinstated the franchises in or about June 2013. As part of that reinstatement, Lorilar paid Schlotzsky's approximately $200,000 to bring its accounts current.

9. Beginning on or about May 1 2013, Schlotzsky's began withholding an additional 1% of the monies Lorilar paid Schlotzsky's, purportedly for national advertising purposes, thereby returning only 2% to Lorilar. Schlotzsky's told Lorilar that this additional 1% was for marketing of a new national catering program. However, Schlotzsky's would not allow its franchisees to become eligible for this catering program unless they performed extensive store remodelings and added a Cinnabon Express unit. The remodeling alone would cost Lorilar approximately $80,000 per store.

10. For over a year, Speas suffered from extensive back problems, which ultimately required spinal surgery. Because of his condition and major spinal surgery in January, 2016, Speas was unable to participate in most of the day-to-day operations of Lorilar for the last four months of 2015 and first three months of 2016.

11. The loss of an additional 1% of revenue severely hurt Lorilar's finances, and Lorilar fell behind in paying the newly increased fee required by Schlotzsky's. On March 29, 2016, Schlotzsky's sent Lorilar a Notice of Default for each of the five stores (collectively, "the

Notices"). The Notices stated that Lorilar was in material default of the respective Franchise Agreements for "failing to pay weekly royalties and advertising contributions since October 2015." Schlotzsky's summarily claimed, but without providing any accounting statements, that "[a]ccording to Franchisor's records," Lorilar owed the following amounts: $24,193.87 for Red Mill, $10,356.55 for Military Circle, $15,067.35 for Main Street, $38,766.45 for Pembroke, and $37,296.00 for Hilltop (a total of $125,689.22). These Notices are attached hereto as <u>Exhibits A through E</u>. No accounting was provided with the Notices.

12. The Notices stated that Lorilar had ten days to cure the monetary breaches by paying the full amounts owed. *Id.*

13. Between mid-March 2016 and late April, Lorilar sent approximately $68,000 to Schlotzsky's for payments of the allegedly overdue accounts. For undisclosed reasons, Schlotzsky's has not cashed two of these checks. Schlotzsky's did not timely provide accounting statements itemizing the amounts allegedly owed, but the amounts Lorilar has remitted since March 29, 2016, are enough to bring at least certain restaurants current. On April 14, 2016, Lorilar's counsel also wrote counsel for Schlotzsky's and confirmed Lorilar's good faith intent to cure the alleged defaults and bring its payments current. Lorilar's counsel asked that Schlotzsky's counsel contact him if this was not acceptable. See <u>Exhibit F</u> hereto. Counsel for Schlotzsky's never responded, and Lorilar continued to make payments.

14. Despite Lorilar's extensive, good faith efforts to bring all its payment obligations current, on April 26, 2016, Schlotzsky's sent Notices of Termination for each of the five restaurants, purporting to terminate the Franchise Agreements (collectively, "the Termination Notices"). The Termination Notices referenced the prior Notices of Default. As to four of the five restaurants, the Notices again stated that Lorilar was in monetary default for failing to pay

royalties and advertising contributions and claimed that, again without providing any accounting statements, Lorilar owed the following amounts: $21,213.92 for Red Mill, $9,264.70 for Military Circle, $11,888.24 for Main Street, and $30,994.72 for Hilltop (a total of $73,361.58). The Notice of Termination for Pembroke did not specify the amount of monetary default. The Pembroke Notice also alleged additional breaches of the Franchise Agreement that were not discussed in the Notice of Default, such as failing to install a Cinnabon Express unit. All five (5) Notices are attached hereto as <u>Exhibits G through K</u>.

15. On the morning of April 28, 2016, trucks scheduled to deliver food stuffs and supplies that Lorilar requires to continue operating, such as Schlotzsky's proprietary bread mix, were turned away shortly before they arrived at Lorilar's restaurants. Schlotzsky's representative ordered the trucks not to deliver the needed products.

16. On April 28, 2016, two days after the Notices of Termination, and hours after the delivery trucks were turned away, Schlotzsky's finally sent Lorilar, for the first time, a detailed accounting statement, in which it alleged that Lorilar owed it $114,244.61.

17. The Virginia Retail Franchising Act, Va. Code § 13.1-557 *et seq.* (hereinafter "VRFA"), is designed "to correct as rapidly as practicable such inequities as may exist in the franchise system so as to establish a more even balance of power between franchisors and franchisees; to require franchisors to deal fairly with their franchisees with reference to all aspects of the franchise relationship and to provide franchisees more direct, simple, and complete judicial relief against franchisors who fail to deal in a lawful manner with them. *Id.* § 13.1-558.

18. To that end, the VRFA bars unreasonable terminations of franchises. It makes it "unlawful for a franchisor to cancel a franchise without reasonable cause or to use undue

5

influence to induce a franchisee to surrender any right given to him by any provision contained in the franchise." *Id.* § 13.1-564.

19. The purported cancellation of Lorilar's five franchises was without reasonable cause and violated the VRFA. Among other things, the purported terminations: (1) were based on alleged defaults caused by an improperly increased royalty/advertising fee; (2) did not provide accountings justifying the alleged defaults; (3) ignored Lorilar's substantial subsequent payments and confirmed good faith efforts; (4) did not allocate Lorilar's payments in a manner that cured the defaults in certain of the restaurants, (5) as to Pembroke, the Notice of Termination did not specify how much was owed and relied on previously undisclosed grounds for termination.

20. Schlotzsky's actions in terminating the Franchise Agreements and carrying out the terminations will cause Lorilar irreparable harm, including, but not limited to, the shuttering of five long-operating, profitable businesses, firing of long-term employees with extensive knowledge and training, damage to Lorilar's reputation in the market, causing breaches of Lorilar's respective leases, and stopping Lorilar's sole source of income which will prevent future payments to cure any defaults. Lorilar's leases on its five stores total approximately $28,000 monthly. For the same reasons, Schlotzsky's actions also were an exercise of undue influence in an attempt to cause Lorilar to surrender its rights under the Franchise Agreements, and breach the implied covenant of good faith and fair dealing by exercising its discretion as to the fees charged Lorilar and as to termination of its restaurants arbitrarily and unfairly.

21. In light of the actions taken by Schlotzsky's and the irreparable harm that Lorilar would suffer by the immediate closing of its restaurants, Lorilar has no adequate remedy at law,

and also seeks a temporary restraining order and preliminary injunction, pursuant to Federal Rule of Civil Procedure 65.

## COUNT I: DECLARATORY JUDGMENT

22. The foregoing allegations are hereby adopted and incorporated, as if re-alleged herein.

23. Pursuant to 28 U.S.C. § 2201, Lorilar requests that this Court enter a declaratory judgment that Schlotzsky's' actions purporting to terminate the Franchise Agreements, to include accepting Lorilar's substantial payments and then ceasing deliveries of supplies, are cancellations without reasonable cause that violate the VRFA and breach the implied covenant of good faith and fair dealing.

24. Lorilar further requests a declaration that Schlotzsky's has used undue influence to try and induce Lorilar to surrender the rights given to it by the Franchise Agreements, also in violation of the VRFA.

25. Lorilar will suffer immediate and irreparable harm if its restaurants are actually or effectively closed, to include the loss of trained employees, damage to Lorilar's reputation, and inability to maintain a revenue stream allowing continued payments to Schlotzsky's and for other continuing expenses.

26. An actual controversy exists between the parties that is justiciable and ripe for judicial determination. Lorilar has no other recourse but to ask this Court for an adjudication of its statutory and common law rights.

PRAYER for Declaratory Judgment: Wherefore, Plaintiff Lorilar Enterprises, Inc. asks this Honorable Court to enter a declaratory judgment against Defendant Schlotzsky's Franchise

LLC declaring that Schlotzsky's actions in purporting to terminate Lorilar's five franchises violate applicable law, are null and void, and ordering that Defendant must adhere to its legal and contractual obligations. Lorilar also seeks an award of its costs and attorneys' fees.

Respectfully submitted,

LORILAR ENTERPRISES, INC.

By Counsel

_____
Robert W. McFarland (VSB No. 24021)
E. Rebecca Gantt (VSB No. 83180)
MCGUIREWOODS LLP
101 West Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3700
Facsimile: (757) 640-3701
E-mail: rmcfarland@mcguirewoods.com
         rgantt@mcguirewoods.com

78072494_2